```
 1              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                      SHERMAN DIVISION

 3

 4   IN RE:                  )   BK. NO:  20-42257-BTR

 5                           )

 6   FRISCO ACQUISITION, LLC )

 7        D E B T O R.       )

 8

 9

10           *   *   *   *   *   *   *   *   *   *

11              TRANSCRIPT OF PROCEEDINGS

12           *   *   *   *   *   *   *   *   *   *

13

14

15

16

17

18

19

20      BE IT REMEMBERED, that on the 10th day of May, 2022,

21   before the HONORABLE BRENDA T. RHOADES, United States

22   Bankruptcy Judge at Plano, Texas, the above styled and

23   numbered cause came on for hearing, and the following

24   constitutes the transcript of such proceedings as hereinafter

25   set forth:
```

```
 1               P R O C E E D I N G S

 2               COURTROOM DEPUTY:  Number 6, page 2, Frisco

 3  Acquisition, LLC.  Case number 20-42257.  Motion to withdraw

 4  certain claims.

 5               THE COURT:  Appearances.

 6               MR. PODAL:  Good morning, Your Honor.  Richard

 7  Podal on behalf of Wanda Bertoia.

 8               THE COURT:  Okay.

 9               MR. PORTELA:  Good morning, Your Honor.  Jose

10  Portela and Paul Guelich here on behalf of debtor, Frisco

11  Acquisition.

12               THE COURT:  Okay.

13               MR. SCHURR:  Good morning, Your Honor.

14  Patrick Schurr on behalf of Wanda Bertoia.

15               THE COURT:  Okay.  All right.

16        Mr. Schurr, it's your motion.  Where are we?

17               MR. SCHURR:  Your Honor, Mr. Podal is going to

18  argue the motion.

19               THE COURT:  Okay.

20        Mr. Podal.

21               MR. PODAL:  Thank you, Your Honor.

22        Your Honor --

23               THE COURT:  Okay.  I think -- do you have us

24  on speaker phone or something?  We're having trouble hearing

25  you now.
```

1            MR. PODAL:  Okay.  Let me see if I can move

2   the phone a little closer.  Is that good?

3            THE COURT:  No.  Do you have us on speaker

4   phone?  You need to pick it up.

5            MR. PODAL:  Okay.  Hold on.

6            THE COURT:  Okay.  And while you're doing

7   that, we have another appearance.

8            MR. LEVICK:  Sorry, I'd stepped out, Your

9   Honor.  Larry Levick for Christopher Moser, the Chapter 7

10  Trustee.  And Mr. Moser is in the courtroom, as well.

11           THE COURT:  Okay.  I see that he is.  Thank

12  you.

13      Okay.

14           MR. PODAL:  Okay.  Your Honor, I'm off

15  speaker.  Is that --

16           THE COURT:  Much better.  Thank you.

17           MR. PODAL:  Okay.  Thank you, Your Honor.

18      Are we ready?

19           THE COURT:  You may proceed.

20           MR. PODAL:  Thank you.

21      Your Honor, Ms. Bertoia has filed a motion to withdraw

22  certain claims.  And Ms. Bertoia requests leave to withdraw

23  all of her claims with exception of the fraudulent inducement

24  claim without prejudice.  Her purpose is simple and

25  straightforward.  Ms. Bertoia will claim damages of

1  approximately a million dollars under her fraudulent

2  inducement claim.  If that claim is allowed, it would obviate

3  the need for any further litigation in this bankruptcy case,

4  because the assets in the bankruptcy estate are estimated to

5  be under $700,000.  The advantage to all parties and the

6  Court are clear.  First, simplifying the case would reduce

7  the cost to all parties and Trustee by eliminating the need

8  to brief and argue and resolve dispositive motions.

9  Eliminate the need for further discovery and resolution of

10  discovery disputes.  Eliminate the need to prepare and argue

11  claim objections to Ms. Bertoia's other claims that would

12  eliminate the need to prepare and argue claims objections to

13  WPB's claims.

14         Second, the withdrawal all of Ms. Bertoia's claims and

15  proceeding with a credit objection hearing on just

16  Ms. Bertoia's fraudulent inducement claim will create a

17  substantial judicial economy.  It would be unnecessary for

18  the Court to address and resolve future discovery disputes.

19  It would be unnecessary for the Court to address and resolve

20  dispositive motions.  It will be unnecessary for the Court to

21  address claims objections.  Ms. Bertoia's withdrawing claims.

22  It will be unnecessary to address any of WPB's claims.

23  Finally, if Ms. Bertoia's claim for fraudulent inducement

24  goes well, the bankruptcy estate could be expeditiously

25  concluded.

1          In their limited objection to Ms. Bertoia's motion to

2    withdraw certain of her claims, the debtor does not contest

3    this approach of withdrawing all of the claims except the

4    fraudulent inducement claim would simply this litigation,

5    reduce the expenses for all parties, and create a substantial

6    judicial economy.  The debtor rather asks that the claims

7    Ms. Bertoia seeks to withdraw be conditioned on those claims

8    being withdrawn with prejudice.  This request is a

9    transparent attempt by the debtor to gain an advantage in the

10   Colorado litigation.  A dismissal with prejudice of the

11   claims Ms. Bertoia asks to withdraw would create a collateral

12   estoppel or res judicata argument in Colorado.  We explain

13   this at page 3 of our reply brief, which is document 310.  A

14   dismissal with prejudice would operate as a final

15   adjudication not just on claims asserted against Frisco, but

16   on claims asserted against Frisco's (indecipherable word),

17   which are the alter ego claims asserted against a party who

18   controls Frisco, pays all of its attorney fees in all of

19   these proceedings, and makes all of the decisions, Jagmohan

20   Dhillon.

21         Simply, Ms. Bertoia asks to withdraw her claims against

22   Frisco with the exception of her fraudulent inducement claim

23   without prejudice.  Ms. Bertoia intends to proceed the

24   withdrawn claims against Jagmohan Dhillon as an alter ego in

25   Colorado, as this Court has authorized her to do, expressly

1    authorized her to do in its order granting partial relief

2    from stay.  Frisco asks this Court to reject Ms. Bertoia's

3    request to withdraw her claims without prejudice

4    (indecipherable word) the benefits to the parties of a

5    streamline procedure, reduce costs, and expedited resolution.

6    Frisco would also ask to prevent the achieving a substantial

7    judicial economy for the purpose of gaining a litigation

8    advantage in Colorado litigation.  We respectfully submit

9    that this is an improper purpose.

10        We would also observe, this is exactly the approach

11   Frisco Acquisition attempted to pursue in WPB's Chapter 11

12   bankruptcy in Colorado.  We've attached as Exhibit A to our

13   reply a transcript of that hearing, which is document 323-1.

14   And I'd like to quote from page 9.  Judge Brown in the

15   Colorado Chapter 11 WPB bankruptcy saw through Frisco's

16   approach.  She understood that, as she put it, voting to the

17   form of litigation strategy in the Colorado bankruptcy.

18   Judge Brown stated as follows starting at line 23 on page 9

19   of document 323-1, And what I see where with Abis and Frisco

20   is that they are not voting to maximize recovery on your

21   claim.  They are voting to form a litigation strategy.  They

22   are voting to disrupt the debtor's process here so that they

23   think they will achieve some sort of a benefit in that state

24   court litigation that the debtor has brought against Abis and

25   Frisco for their failure to honor the purchase agreement in

1    this case.  So that's what they're truly trying to achieve

2    and the Court sees that.  And that is exactly what Frisco

3    Acquisition is trying to do in this case.

4         To be clear, as we indicated in our reply, Ms. Bertoia

5    has no interest in reasserting her withdrawn claims in this

6    bankruptcy proceeding.  She will stipulate not to do so.  She

7    cannot accept a condition, however, to withdrawal of her

8    claims if the withdrawal would be with prejudice, as that

9    would be used by the alter ego, a living breathing person in

10   Frisco Acquisition in all of this, Jagmohan Dhillon, to

11   attempt Ms. Bertoia -- to attempt to preclude Ms. Bertoia

12   from asserting her alter ego claims in Colorado, which this

13   Court expressly authorized her to do.

14        So Ms. Bertoia simply asks that the motion to withdraw

15   her claims, other than her fraudulent inducement claim, would

16   be granted without prejudice.  That all other proceedings,

17   summary judgment proceeding in this case be stayed and the

18   Court set a claims objection hearing on Ms. Bertoia's

19   fraudulent inducement claim at the earliest convenience of

20   (indecipherable few words).

21        Thank you, Your Honor.

22             THE COURT:  All right.  Did you have a

23   response?

24             MR. PORTELA:  I do, Your Honor.  May I

25   proceed?

1          THE COURT:  You may.

2          MR. PORTELA:   Thank you, Your Honor.

3      I think it's important to look at some timing to

4   understand what's really going on here.  Your Honor, before

5   the Court pending and ripe for ruling is docket number 277.

6   It would be the motion for summary judgment on Wanda

7   Bertoia's claims.  That was filed 15 days before this, quote,

8   motion to withdraw, which is really a motion to amend,

9   obviously, and get rid of claims.  What's going on here is

10  what the Court should be asking itself.  Why now so late in

11  the game, after deadlines have passed, is Wanda Bertoia

12  asking this Court to just get rid of, ignore all of her other

13  claims without prejudice and proceed forward with piecemeal

14  litigation?

15      Your Honor, a little bit of history on this case, to

16  remind the Court how we got to the current MSJ that's pending

17  and the amendment deadline.  Previously we are now on the

18  third amended claim of Wanda Bertoia.  She has filed original

19  claim and three amendments.  The second amended was actually

20  teed up for motion for summary judgment previously.  What

21  happened was, they asked to be able to amend again.  And,

22  therefore, dance around getting their claims actually

23  addressed by this Court and this Court hearing the motion for

24  summary judgment that was pending.  This Court granted mercy

25  upon them and there's an agreed scheduling order that was

1    entered.  And that's docket number 198.

2         That agreed scheduling order provided that they should

3    amend by November 1st, which they did.  That's their third

4    amended claim.  That agreed scheduling order provided that an

5    objection should be filed to the amended claim, if there was

6    one, by November 15th.  We did that.  We complied with that.

7    The next part of that order says, you have 90 days to conduct

8    discovery.  Again, both parties conducted discovery.  You

9    will recall that there was even a motion to compel hearing,

10   which we'll talk about in a second, which I think gives us

11   guidance on how today should be handled.  Finally it says,

12   any dispositive motion be filed on March 16th.  Debtor did

13   that.  So we complied with the agreed scheduling order.

14        Only after the motion for summary judgment on their

15   claims was filed did they now say, okay, we don't really want

16   you to ever address our claims.  We're just going to carve

17   out the fraudulent inducement claim.  But by the way, we're

18   doing that without prejudice.  This is why FRCP 41(a)(2)

19   exists, Your Honor, because they can't voluntarily dismiss

20   under that rule.  We are past the stage of where they can od

21   it, because that rule makes it very clear that if an answer

22   has been filed or if there is a pending motion for summary

23   judgment, they must get your permission and you can grant on

24   terms that the Court considers proper.  And I will suggest to

25   the Court that you've already done this dance once.  You did

1    it in the middle of a motion to compel hearing.

2        You may recall that we sought discovery on these RICO

3    claims that may be familiar to the Court.  That we had all of

4    these requests for production based on these RICO claims and

5    they didn't want to provide any discovery on that.  So the

6    Court said, okay, so you're going to dismiss those claims?

7    And they said, yes.  And the Court said, and you're going to

8    dismiss them with prejudice?  And they said, yes.  And that's

9    the same procedure that should be employed today.  There's no

10   difference other than now we literally have a motion for

11   summary judgment pending, which is what we're looking for,

12   Your Honor.  We're looking to some finality to these claims.

13       What they want to do is run from this Court, run over

14   to Colorado, ignore the fact that a bankruptcy is filed, and

15   pursue the very same claims.  And I will suggest, Your Honor,

16   that 41(a)(2) was created to stop this.  And this is from the

17   Federal Practices & Procedures Civil Section 2363, the

18   voluntary dismissal section in the fourth edition.

19       The adoption of MRCP 41(a) in 1938 and later amended in

20   1948 brought needed standardization to federal practice to

21   prevent the abuses of a plaintiff's right to voluntary

22   dismissal.  Rule 41(a)(1) was intended to eliminate the

23   annoying of a defendant by being summoned into court in

24   successive actions, i.e., brief or arguably different claims,

25   just like this court, and then if no settlement is arrived

1  at, which by the way, Your Honor, we did mediate and no

2  settlement was reached, requiring him to permit the action to

3  be dismissed and another one commenced at leisure.  And

4  that's exactly what he's told you they're going to do.  You

5  heard, we want to go pursue these in Colorado.  That's what

6  he told you, they want to go do this litigation in Colorado.

7  Which brings us full circle to why we're in bankruptcy, Your

8  Honor.

9       We're in bankruptcy because Frisco simply could not

10 maintain what was getting to be out of control, hundreds of

11 thousands of dollars in attorney's fees being spent on this

12 Colorado litigation where all sorts of people were being sued

13 and asked to be sued.  I think at one point the number of

14 defendants was up to 14, including Joyce Lindauer, their

15 former attorneys, whatever.  It got out of control.  And so

16 the purpose of the bankruptcy is to get finality.  There is

17 no finality in what they've just proposed to you, Your Honor.

18 If you listen to what they said it's, well, if we win, then

19 maybe we'll do something with these other WPB claims.

20 They're not dismissing those, either.  They just want you to

21 put those on hold.  So the definition of piecemeal

22 litigation, Your Honor.  They want to -- and it's just like a

23 plaintiff that has five different causes of action.  They

24 want you to literally try one and if it doesn't work, let's

25 try the second one.  That's what they're asking you to do

1   with the WPB claims.  That's their stay portion of this

2   motion.  And stay the motion for summary judgment on their

3   claims?  Why?  Why can't this Court finally put an end, one

4   way or the other, at least -- perhaps the Court can find a

5   fact question.  I'm not saying you can't.  But it's teed up,

6   Your Honor.

7        We had an agreed -- we have an agreed scheduling order

8   that they agreed to.  Everyone participated in that.  We've

9   all followed it.  And now after the MSJ gets filed, oh, we

10  want to dismiss without prejudice.  We think, Your Honor,

11  that's inappropriate.  It violates the purpose of 41(a)(2).

12  What we ask, Your Honor, is that you proceed to hear the

13  motion for summary judgment.  And we think that -- we believe

14  that you can grant that and finally put an end to all of

15  this, which is the purpose and that conserves judicial

16  resources.

17       There's no conservation of judicial resources if we

18  proceed on the fraudulent inducement claim.  It's all the

19  same witnesses.  It's all the same documents.  It's all the

20  same people.  And what they want to do is, well, let me see

21  if I can win that.  And if I can win that one, great, maybe I

22  don't need these other ones.  But they're not telling you

23  noticeably, hey, we'll dismiss the WPB claims with prejudice.

24  So they don't even believe in what they're advocating to this

25  Court that they're going to win that one.  So then what we're

1   going to have is a second trial.  Guess what, same witnesses.

2   Same documents.  Same stuff.  It's the reverse of saving

3   judicial resources and saving us all of these conflicts.

4        By the way, discovery is closed.  Now, they do owe us

5   Wanda Bertoia's deposition and WPB's.  But there's no fights.

6   That fight's already been had.  So this whole, oh, we'll

7   avoid all of these discovery fights, we've already had the

8   discovery fights.  And that's where you handled this the same

9   way, in my opinion, that it should be handled today.  If you

10  guys want to dismiss, you need to do it with prejudice.  The

11  debtor does not stand in the way of such a thing.  But

12  dismissing without prejudice doesn't achieve anything.  And

13  it's the opposite of conserving judicial resources.  And

14  ignores the hundreds of thousands of dollars that have been

15  spent already in this bankruptcy to get these claims teed up

16  for you to rule on.

17        Thank you, Your Honor.

18             THE COURT:  Thank you.

19        All right.

20             MR. PODAL:  Your Honor, may I reply?

21             THE COURT:  No.  No.

22        Given Rule 41, as well as the fact that the bar date

23  has been set in this case for filing all proofs of claims as

24  of, when was it, February -- let me look here -- it was

25  February 16, 2021, the bar date's been set.  If you have

14

1  any -- and those claims were filed.  If you're going to

2  withdraw them, they need to be withdrawn with prejudice.  So

3  the motion is denied.  If you wish to withdraw with

4  prejudice, you do not need to file a motion.  You can simply

5  withdraw those claims with prejudice.

6          MR. PODAL:  Your Honor, in that case we're

7  just going to not withdraw our claims because this case was

8  filed in Colorado in 2019.  The bankruptcy was filed in a

9  response to this debtor using the exact same arguments they

10  made in Colorado.  It's just backwards to say we're running

11  to Colorado.  We were in Colorado litigating these claims.

12  They ran to Texas to try to stop us.

13          THE COURT:  I understand your respective

14  positions.  I've already ruled.  If you wish to dismiss with

15  prejudice, you may do so.  If you don't wish to, you don't

16  have to do so.  But any voluntary dismissal at this point in

17  time will be with prejudice.  So the motion is denied.

18      I'm going to ask counsel to submit an order to the

19  Court consistent with the Court's ruling denying the motion.

20  Okay?

21          MR. PORTELA:  I will do so, Your Honor.

22          THE COURT:  Now, with respect to the motion

23  for summary judgment that is pending.  Is there any -- any

24  further briefing or anything else that needs to be done, or

25  is it ready for argument and ruling?

1          MR. PODAL:  No, it's not, Your Honor.

2      Your Honor, we have filed -- we have filed

3  (indecipherable word) response and Rule 56(d) motions because

4  of the serious heart condition of Arthur Lindquist-Kleissler.

5  Mr. Sean Martin is in the -- is on the phone, who's

6  Mr. Linquist-Kleissler's paralegal.  My understanding is he's

7  only been able to speak with him once since his surgery five

8  or six weeks ago.  He was out of the hospital briefly under

9  home care and he's been re-hospitalized.  And we've filed

10  Rule 56(d) motions in both cases without further responding

11  to the summary judgment motion, which is why we wanted to do

12  it this way because a fraudulent inducement claim -- I know

13  you've ruled and I mean no disrespect, but the fraudulent

14  inducement claim is totally different.  All we have to do is

15  prove fraud in the inducement and independent damages.  We

16  don't have to get into the issue of the contract and who

17  didn't perform and why it wasn't performed and all of that.

18  That is just wrong.  So we were trying to expedite the

19  procedure that would conclude this bankruptcy.  We think the

20  fraud is palpable in a fraudulent inducement claim.  We can

21  go forward on that.  It isn't even challenged in the

22  dispositive motions.  Dispositive motion just says, you

23  didn't get Bankruptcy Court approval in Colorado.  We win.

24  And there are a myriad of factual issues as to why there

25  non-performance, as the Colorado Court originally found.

1       So, no, the summary judgment motions aren't ripe for

2    resolution.  We have filed 56(d) affidavits and a partial

3    response just to indicate to the Court the myriad of facts

4    that exist.  And, you know, maybe Mr. Martin could address

5    Mr. Linquist-Kleissler's condition.  I'm not sure any of us

6    are sure exactly when he is going to be able to participate

7    in these proceedings.  But we're going to need his

8    participation to move forward.

9                  MR. PORTELA:  May I respond, Your Honor?

10                 THE COURT:  Hold on.

11                 MR. PORTELA:  Yes, Your Honor.

12                 THE COURT:  All right.  You may respond.

13                 MR. PORTELA:  Yes, Your Honor.

14       I believe the motions for summary judgment are ripe for

15    ruling.  And I will get the Court the docket numbers, because

16    I think you can conclude this on your own.

17       So the pending motion for summary judgment for Wanda

18    Bertoia's claim is 277.  That was filed on March 16th.  The

19    response and motion -- Rule 56 motion is docket 309 that was

20    filed on April 13th, 2022.  That contains what they call a

21    preliminary response.  We filed our response to the Rule 56

22    and essentially reply to their response to the MSJ on -- this

23    is all on Bertoia's claim, it's docket 319 filed on April

24    27th, 2022.  There are appendices that go along with each of

25    those, I believe, Your Honor, that I'm not citing to the

1   Court.  It's ripe for ruling.  That's it.  We've got the

2   response to the Rule 56.  We've got what they label a

3   preliminary response.  We've got -- if you deny -- obviously

4   if you deny the 56, there's no question their preliminary

5   response is their response because that's what the Court told

6   them to do at our last hearing was filed your response and if

7   you have a Rule 56, file it at the same time.  That's what

8   you told them to do at the last hearing.  Okay?  So that's

9   ripe.  You can decide both of those motions, the Rule 56 and

10  the motion for summary judgment.  There's no further briefing

11  necessary on that.

12      We argue -- and I'm not going to get into it, because

13  it's not set today.  We can, if the Court would like.  But we

14  argue in our response to the Rule 56 and our reply why their

15  Rule 56 doesn't accomplish anything.  Even if they had

16  Mr. Linquist, it's not going to help them.  So the Court can

17  read those and make the determination.  Maybe you want a

18  hearing.  Maybe you don't.  You made that very clear last

19  time that the Court decides when it needs a hearing.  But

20  those are ripe.

21      Now, Your Honor, we have related, albeit it's different

22  arguments, motions for summary judgment, 279, I believe is

23  the WPB -- our motion for summary judgment on the WPB claims.

24  I believe 308 is their Rule 56 and response to the WPB motion

25  for summary judgment.  What I don't have with me, Your Honor,

1   although I think it was filed the same day as the prior

2   response, is our response to their Rule 56 motion and reply

3   to the motion for summary judgment.  Those were filed on the

4   same day.  In fact, I believe the WPB one was filed first,

5   because that one is even more blatant on why Mr. Linquist

6   can't possibly save the day on a contract where in open

7   court, Mr. Bukler, the other attorney representing WPB

8   stated, we're no longer going forward with that contract.

9   The deal has changed.  That deal is dead.  And the Court

10  required them to give a new notice because it was a new deal.

11  And the new deal gets rid of that contract with WPB.  It's

12  very clear, they announce it on the record.  And the notice

13  that the Court required says, new deal.  Here's what it is.

14  That old contract is gone.  Mr. Linquist can't fix that.

15  That's the reality of this.  Really what they're asking for

16  is in their 56s they say, we need our own attorney's

17  testimony.  And you can see, we address that issue of, no,

18  you've got documents.  You've got pleadings.  You've got

19  Court transcripts.  That's legitimate, credible evidence.

20  But what is Mr. Linquist going to get up and say against what

21  his own co-counsel said, that deal's dead.  It's terminated.

22  Cancelled.  Rescinded.  Call it what you want.  You can't fix

23  it, Your Honor.

24       So respectfully, I disagree with Mr. Podal.  You have

25  everything you need.  Everything is fully briefed at this

1   point on both of those motions for summary judgment and the

2   Rule 56 motions.

3                    THE COURT:  Okay.  Thank you.

4        We're going to take --

5                    MR. PODAL:  Your Honor --

6                    THE COURT:  No, Mr. Podal, just wait, please.

7        The Court is going to set the summary judgment motion

8   that is docket number 277 and the related motion for summary

9   judgment, docket number 279, as well as the Rule 56(d)

10  motions, which is docket number 309 and 308 for hearing.

11  That hearing will be on June 3rd at 10 a.m.

12                   MR. PODAL:  Your Honor, hold on just a second.

13       Your Honor, wouldn't the proper procedure to be -- to

14  have a hearing or to determine the 56(d) motions first --

15                   THE COURT:  I appreciate you telling the Court

16  what the proper procedure is.  I've ruled.  All of those

17  matters will be set for hearing on June 2nd at 10 a.m.

18       Thank you.

19                   MR. PORTELA:  June 3rd, Your Honor?

20                   THE COURT:  3rd, I'm sorry, June 3rd.  Hold

21  on.

22       Yes, June 3rd.

23                   MR. PORTELA:  The debtor is available, Your

24  Honor.

25                   THE COURT:  Okay.

1          MR. PODAL:  Your Honor, yeah, I can be

2  available on June 3rd.

3          THE COURT:  Thank you.

4      All right.  We will see you back then.  Thank you.

5          MR. PORTELA:  Thank you, Your Honor.

6          THE COURT:  Parties are excused.

7          MR. SCHURR:  Your Honor -- I'm sorry.

8          THE COURT:  Oh, yes, Mr. Schurr.

9          MR. SCHURR:  Can Mr. Podal appear

10  telephonically --

11          THE COURT:  Certainly.

12          MR. SCHURR:  I'd much rather get that out of

13  the way before --

14          THE COURT:  No.  That is just fine.  He just

15  needs to contact my courtroom deputy about getting that done.

16  He can appear telephonically, if he so chooses.

17          MR. SCHURR:  I figured I'd ask while we're all

18  here.

19          THE COURT:  Yeah, that's fine.

20          MR. SCHURR:  The way I understand it, that

21  procedure is due within 48 hours or something like that.

22          THE COURT:  Well, we've already let Ms. Marzet

23  know.  You all just need to contact her so she can give you

24  the call in information.

25          MR. SCHURR:  Yes, ma'am.

1                    THE COURT:  All right.

2                    MR. PORTELA:  Your Honor, can I ask a

3    procedure question?

4                    THE COURT:  Yes, sir.

5                    MR. PORTELA:  So to the extent that we have

6    attached exhibits to our motion for summary judgment or

7    reply, do we need to file a separate exhibit list identifying

8    those very same exhibits that are already before the Court?

9                    THE COURT:  If they're already attached to the

10   motion itself, no, because we can reference those and there's

11   a record copy of those.

12                   MR. PORTELA:  Perfect.

13                   THE COURT:  If it's not attached, then I need

14   to have -- I need you to submit them at the hearing, or I

15   guess you could file them ahead of time.

16                   MR. PORTELA:  Thank you, Your Honor.  May we

17   be excused?

18                   THE COURT:  You may.

19                        (End of Proceedings.)

20

21

22

23

24

25

```
 1              C E R T I F I C A T E

 2              I, CINDY SUMNER, do hereby certify that the

 3    foregoing constitutes a full, true, and complete

 4    transcription of the proceedings as heretofore set forth in

 5    the above-captioned and numbered cause in typewriting before

 6    me.

 7

 8

 9

10

11

12

13

14                                /s/Cindy Sumner

15                                _____

16                                CINDY SUMNER, CSR #5832
                                  Expires 10-31-2022
17                                Cindy Sumner, CSR
                                  5001 Vineyard Lane
18                                McKinney, Texas 75070
                                  214 802-7196
19

20

21

22

23

24

25
```